**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CIT BANK, N.A.,**

                            **Plaintiff,**

  vs.                                        **3:18-cv-00154
(MAD/ML)**

**DOROTHY FOX; LVNV FUNDING LLC A/P/O
CREDIT ONE BANK, N.A.; and HARVEST
CREDIT MANAGEMENT VII LLC,**

                             **Defendants.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

**BRONSTER, LLP**                         **SEAN K. MONAHAN, ESQ.**
156 West 56th Street
Ste 1801
New York, New York 10019
Attorneys for Plaintiff

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Plaintiff CIT Bank, N.A. ("Plaintiff"), commenced this action on February 6, 2018, pursuant to Article 13 of the New York Real Property Actions and Proceedings Law ("R.P.A.P.L.") to foreclose a mortgage encumbering the property, land, buildings, and other improvements located at 1530 County Highway 41, Roxbury, New York 12474 (the "Mortgaged Property"). *See* Dkt. No. 1 at ¶ 1. Defendants Dorothy Fox, LVNV Funding a/p/o Credit One Bank, N.A. ("LVNV"), and Harvest Credit Management VII LLC ("Harvest") have not appeared in this action. *See* Dkt. No. 46-11 at 4; Dkt. No. 51-13 at 4. On May 17, 2019, the Court, for a second time, denied without prejudice Plaintiff's motions for default judgment against Defendant Dorothy Fox and Defendants LVNV and Harvest because of procedural defects. *See* Dkt. No. 35

at 7. On June 25, 2019, Plaintiff requested an entry of default against Defendants LVNV and Harvest, which was granted on June 28, 2019. *See* Dkt. Nos. 41, 43. On August 27, 2019, Plaintiff requested an entry of default against Defendant Dorothy Fox, which was granted the next day. *See* Dkt. Nos. 49, 50.

Currently before the Court are Plaintiff's renewed motions for default judgment against Defendant Dorothy Fox and against Defendants LVNV and Harvest pursuant to Rule 55(b) as well as its motion for judgment of foreclosure and sale of the Mortgaged Property pursuant to Article 13 of the R.P.A.P.L. *See* Dkt. Nos. 46 & 51.

## II. BACKGROUND

The Court refers the parties to the May 17, 2019, Memorandum-Decision and Order for a complete recitation of the facts preceding that decision. *See* Dkt. No. 35 at 2-4. There, the Court denied without prejudice Plaintiff's motions for default judgment against Defendant Dorothy Fox and Defendants LVNV and Harvest because of two procedural defects. *See id.* at 7. First, Plaintiff had failed to seek the Clerk's entry of default on its amended complaint as required by Rule 55(a). *See id.* at 5. Second, Plaintiff had also failed to comply with the service by publication requirements in Magistrate Judge Peebles' July 20, 2018, order. *See id.* at 6. To remedy the first defect, on June 25, 2019, Plaintiff requested an entry of default on its amended complaint against Defendants LVNV and Harvest, which was granted on June 28, 2019. *See* Dkt. Nos. 41, 43. To remedy the second, Plaintiff completed publication of summons and notice to Defendant Fox in accordance with the requirements set forth in Judge Peebles' July 20, 2018, order. *See* Dkt. Nos. 44, 47. After the last publication of the corrected summons ran on July 26, 2019, Plaintiff requested an entry of default on its amended complaint against Defendant Dorothy Fox on August 27, 2019, which the Clerk granted the next day. *See* Dkt. Nos. 49, 50. None of

2

the Defendants have responded to the complaint or otherwise appeared in this action. *See* Dkt. No. 46-11 at 4; Dkt. No. 51-13 at 4.

### III. DISCUSSION

**A.     Rule 55's Procedural Requirements**

"Generally, 'Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant.'" *United States v. Simmons*, No. 5:10-CV-1272, 2008 WL 685498, *2 (N.D.N.Y. Mar. 2, 2012) (quoting *Robertson v. Doe*, No. 05-CV-7046, 2008 WL 2519894, *3 (S.D.N.Y. June 19, 2008)). "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'" *Id.* (quotation omitted); *see also* Fed. R. Civ. P. 55(a). Additionally, Local Rule 55.1 requires the party requesting an entry of default to submit an affidavit showing "(1) the party against whom it seeks a judgment of affirmative relief is not an infant, in the military, or an incompetent person (2) a party against whom it seeks a judgment for affirmative relief has failed to plead or otherwise defend the action as provided in the Federal Rules of Civil Procedure and (3) it has properly served the pleading to which the opposing party has not responded. *See* N.D.N.Y. L.R. 55.1.

"Second, pursuant to Rule 55(b)(2), the party seeking default is required to present its application for entry of judgment to the court." *Simmons*, 2008 WL 685498, at *2 (quoting *Robertson*, 2008 WL 2519894, at *3). "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment." *Id.* (quotation omitted); *see also* Fed. R. Civ. P. 55(b)(2). Additionally, Local Rule 55.2(a) requires that the moving party submit an affidavit attesting that the defendant is neither an infant nor incompetent, is not serving with the armed forces of the United States, has defaulted in

3

appearance in this action, and that service was properly effected under Rule 4 of the Federal Rules of Civil Procedure. *See* N.D.N.Y. L.R. 55.2(a).

In the present matter, the Court finds that Plaintiff has cured the former procedural defects that had prevented the Court from granting its motions for default judgment. Specifically, Plaintiff properly served Defendants LVNV and Harvest with the amended complaint in accordance with Rule 4(e)(2)(A) of the Federal Rules of Civil Procedure. *See* Dkt. No. 37. On June 25, 2019, Plaintiff requested an entry of default on its amended complaint against Defendants LVNV and Harvest, and the Clerk of the Court entered default on June 27, 2019. *See* Dkt. Nos. 41, 42. Additionally, in July 2019, Plaintiff completed publication of summons and notice to Defendant Fox in accordance with the requirements set forth in Judge Peebles' July 20, 2018, order. *See* Dkt. Nos. 44, 47. On August 27, 2019, Plaintiff requested an entry of default against Defendant Fox, which the Clerk entered the next day. *See* Dkt. Nos. 49, 50.

Plaintiff has also complied with all other procedural requirements set forth under Fed. R. Civ. P. 55 and Local Rule 55.2. *See* Dkt. Nos. 41-3, 49-3 (proposed certificates of default); Dkt. Nos. 46-10, 51-12 (proposed forms of default judgment); Dkt. Nos. 41-1, 49-1 (affidavits setting forth all the requirements in Local Rule 55.2(a)). Having found that Plaintiff has complied with Rule 55's and Local Rule 55.2's requirements, the Court next turns to New York's R.P.A.P.L. requirements.

**B.     Article 13 of the R.P.A.P.L.**

"In a mortgage foreclosure action under New York law, a lender must prove (1) the existence of a debt, (2) secured by a mortgage, and (3) a default on that debt." *U.S. Bank, N.A. v. Squadron VCD, LLC*, 504 Fed. Appx. 30, 32 (2d Cir. 2012) (citing *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 n.2 (2d Cir. 1997)).

Here, as noted in the November 21, 2018, Memorandum-Decision and Order, Plaintiff has met the common law requirements to foreclose on the Mortgaged Property: Plaintiff has sufficiently demonstrated that Defendant Fox executed a note secured by a mortgage on the Mortgaged Property, and that Defendant Fox defaulted on the note. *See* Dkt. No. 28 at 6; Dkt. No. 29 at ¶¶ 13-16.

The R.P.A.P.L. sets forth additional procedural requirements for a mortgage foreclosure action in sections 1303 (service of a statutory notice to mortgagor with the summons and complaint), 1304 (prior notice to mortgagor before a lender or assignee commences a legal action), 1306 (lender must file certain information with the superintendent of New York State Department of Financial Services), 1320 (summons must contain a statutory notice), and 1331 (the filing of a notice of pendency). *See* N.Y. R.P.A.P.L. §§ 1303-04, 1306, 1320, 1331.

In the present matter, Plaintiff has demonstrated its compliance with the Article 13 R.P.A.P.L. requirements. First, while Plaintiff ultimately served Defendant Fox through publication, as discussed above, Plaintiff did originally submit an affidavit demonstrating its compliance with section 1303 in serving Defendant Fox a complaint and summons accompanied by the requisite notice. *See* Dkt. No. 19-4 at 2. Second, Plaintiff's June 14, 2017, notice to Defendant Fox satisfied section 1304's requirements. *See* Dkt. No. 51-2 at 97-98. Third, Plaintiff filed the requisite section 1306 information with the New York State Department of Financial Services, *see id.* at 179, and included a statutory notice pursuant to section 1320 with the summons and complaint, s*ee* Dkt. No. 29 at 12. Fifth, on November 30, 2018, Plaintiff filed an amended notice of pendency pursuant to section 1331 with the Delaware County Clerk in the State of New York. *See* Dkt. No. 46-7 at 3. Lastly, Plaintiff also filed the amended complaint with the notice of pendency as required by CPLR section 6511(a). *See id.* at 6.

5

The Court further finds that no material issues of fact remain and that, based upon the notice that has been provided to Defendants up to this point, Defendants are willful in their default. Therefore, Plaintiff's motions for default judgment are granted, and the Court finds that Plaintiff is entitled to a judgment of foreclosure and sale.

**D.    Attorneys' Fees**

"The awarding of attorneys' fees in diversity cases such as this is governed by state law[.]" *Grand Union Co. v. Cord Meyer Dev. Co.*, 761 F.2d 141, 147 (2d Cir. 1985) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 n.31 (1975)). Furthermore, the Second Circuit's prerequisite for contemporaneous time records to establish reasonable attorneys' fees "is expressly based on, and therefore properly construed as limited to, circumstances in which the attorney's fees were awarded pursuant to federal statute rather than through a state law mechanism such as a contract." *Nationstar Mortg. LLC v. Dolan*, No. 1:16-CV-1360, 2019 WL 1970522, *3 (N.D.N.Y. May 3, 2019). Accordingly, "in cases in which the right to attorneys' fees is governed by state law, New York's more liberal rule allowing reconstructed records should apply." *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 147-48 (2d Cir. 2014) (citing *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992)).

Under New York law, "[a]n award of an attorney's fee pursuant to a contractual provision may only be enforced to the extent that the amount is reasonable and warranted for the services actually rendered[.]" *Vigo v. 501 Second St. Holding Corp.*, 121 A.D.3d 778, 779–80 (2d Dep't 2014) (citing *Kamco Supply Corp. v. Annex Contr.*, 261 A.D.2d 363, 365 (2d Dep't 1999)). "In determining reasonable compensation for an attorney, the court must consider such factors as the time, effort, and skill required; the difficulty of the questions presented; counsel's experience, ability, and reputation; the fee customarily charged in the locality; and the contingency or certainty of compensation[.]" *Id.* (citing *Green v. Silver*, 79 A.D.3d 1097, 1098 (2d Dep't 2010));

6

*see also Gandy Mach., Inc. v. Pogue*, 106 A.D.2d 684, 686 (3d Dep't 1984) (affirming a reduction of "manifestly excessive" attorneys' fees from $16,052 to $2,000). New York courts have, for example, denied requests for attorneys' fees where the "plaintiff failed to substantiate the performance of certain services, to establish the time and rate for the services, and to demonstrate the reasonableness of the attorney's fees requested[.]" *Bank of New York Mellon v. Graffi*, 172 A.D.3d 1148, 1150 (2d Dep't 2019) (collecting cases).

In the present matter, the note provides that Defendant Fox will be liable for "reasonable attorneys' fees" if Plaintiff accelerated the loan under the terms of the note, as it has done in the present matter. Dkt. No. 51-2 at 13. The mortgage also provides that "[i]n any lawsuit for Foreclosure and Sale, [Plaintiff] will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount [Defendant] owe[s.]" *Id.* at 31. Thus, here the note and mortgage each contractually authorize recovery of reasonable attorneys' fees.

Plaintiff seeks $13,134.50 in attorneys' fees, of which $10,935.50 have been incurred and $2,200 are anticipated. *See* Dkt. No. 51-1 at ¶ 48. Of the incurred fees, Plaintiff requests $2,800 for a flat retainer fee and $8,135.50 for cumulative hourly fees. *See id.* Plaintiff has submitted contemporaneous legal bills, detailing the nature of each task and the amount of time spent on each, charged to Defendant Fox in this matter. *See generally* Dkt. No. 51-11. However, the Court finds that Plaintiff is not entitled to the requested $10,935.50 for fees incurred because it has failed to establish the reasonableness of this sum. Plaintiff's proposed rates are simply too high for this locality: courts in the Northern District have recently found $90.00 to be a reasonable hourly rate for paralegals, *see Nationstar Mortg. LLC v. Dolan*, No. 1:16-CV-1360, 2019 WL 1970522, *4 n.2 (N.D.N.Y. May 3, 2019), and $350.00 to be a reasonable hourly rate for attorneys with over twenty years of experience, *see Premium Sports, Inc. v. Nichols*, No. 317-

CV-0741, 2018 WL 3574870, *9 (N.D.N.Y. July 25, 2018); *see also Deferio v. City of Syracuse*, No. 516-CV-361, 2018 WL 3069200, *9 (N.D.N.Y. June 21, 2018); *Par. v. Kosinski*, No. 517-CV-0344, 2018 WL 1475222, at *5 (N.D.N.Y. Feb. 5, 2018). Northern District courts have also recently determined $250.00 to be a reasonable hourly rate for senior associates. *See Premium Sports, Inc.*, 2018 WL 3574870, at *9.

Accordingly, after applying rates of $90.00 per hour to the paralegal hours expended, $250.00 per hour to the senior associate hours expended, and $350.00 per hour to the partner hours expended, and after likewise calibrating the flat fee to reflect a rate of $250.00 per hour, the Court reduces the requested award to $6,701.00. *See* Dkt. No. 51-1 at ¶ 41 (listing number of hours worked per attorney); *Nationstar Mortg. LLC*, 2019 WL 1970522, at *4 n.2 (discussing calibration for reasonable hourly fees and flat fees).

This amount, however, is still not reasonable. As previously noted, this is Plaintiff's third attempt at obtaining a default judgment in this matter. Its first motion for default judgment was denied because Plaintiff failed to failed to sufficiently allege subject matter jurisdiction and the notice of pendency was found to be ineffective for several reasons. *See* Dkt. No. 28. Thereafter, Plaintiff filed an amended complaint which sufficiently alleged subject matter jurisdiction. However, when Plaintiff again moved for default judgment on the amended complaint, it did not first obtain the Clerk's entry of default. As such, its motions for default judgment were once again denied. *See* Dkt. No. 35. Now, Plaintiff has finally succeeded in obtaining default judgment and it is entitled to attorneys' fees. It is not, however, entitled to attorneys' fees from Defendant Fox that include the time spent on filing a complaint that failed to adequately allege subject matter jurisdiction, the insufficient notice of pendency, and for its two failed attempts at default judgment. Having reviewed the time records submitted, the Court finds that it is appropriate to further reduce the requested award by fifty percent for this work that, if done

8

properly the first time, would not have been billed. Accordingly, the Court finds that $3,350.50 is a reasonable award of attorneys' fees.

Plaintiff also seeks a flat fee of $2,200 for anticipated attorneys' fees. *See* 51-1 at ¶ 48. The Court declines to award Plaintiff fees for labor it has not yet undertaken, but denies this request with leave to renew. *See Onewest Bank, N.A. v. Shepherd*, No. 1:13-CV-01104, 2015 WL 1957284, *2 (N.D.N.Y. Apr. 29, 2015) (finding that the "[p]laintiff may file a motion to amend the judgment to seek additional attorney's fees *after* the fees are incurred") (emphasis added).

Plaintiff also seeks $2,902.53 for reimbursement of disbursements. *See* Dkt. No. 51-1 at ¶¶ 54-56. To support this request, Plaintiff has submitted contemporaneous bills detailing each disbursement. *See* Dkt. No. 51-11 at 3, 6, 8, 10, 13, 18-24. Accordingly, the Court grants Plaintiff $2,902.53 for reimbursement of disbursements.

**E.     Default Damages, Costs, and Fees**

"While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) (citations omitted); *see also Bravado Int'l*, 655 F. Supp. 2d at 189-90 (citation omitted). "The burden is on the plaintiff to establish its entitlement to recovery." *Bravado Int'l*, 655 F. Supp. 2d at 189 (citing *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158). Furthermore, "a court cannot simply rely on the plaintiff's statement to determine damages on a default judgment." *Happy Homes, LLC v. Jenerette-Snead*, No. 15-CV-01788, 2016 WL 6599826, *4 (E.D.N.Y. Nov. 7, 2016) (citing *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Thus, "even upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought." *Overcash v. United Abstract Group, Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc.*

v. *Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  "While 'the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing.'"  *Id.* at 190 (quotation omitted).  Lastly, as noted above, in foreclosure actions, the note and mortgage, as the governing instruments, should determine any default damages.  *Builders Bank v. Rockaway Equities, LLC*, No. CV 2008–3575, 2011 WL 4458851, *6 (E.D.N.Y. Sept. 23, 2011).

Before awarding the unpaid principal amount in a foreclosure action, a number of courts "in this [c]ircuit have 'required more than production of the initial mortgage and an affidavit stating the outstanding principal on a loan[.]'"  *Nationstar Mortg. LLC v. Atanas*, 285 F. Supp. 3d 618, 627 (W.D.N.Y. 2018) (quoting *Happy Homes, LLC*, 2016 WL 6599826, at *5) (collecting cases).  Courts have declined to award a plaintiff's request for the amount of the unpaid principal when "the [c]ourt is unable to verify [a] [p]laintiff's calculations because [the] [p]laintiff does not indicate what payments, if any, were made on the outstanding principal from the time the [n]ote was issued until the default date."  *Happy Homes, LLC*, 2016 WL 6599826, at *5.  In addition to denying requests for the unpaid principal or interest payments because of insufficient documentation, "[m]any other cases have also denied awards for advances and other costs where the plaintiff failed to substantiate its request with proper documentary support."  *Nationstar Mortg. LLC*, 285 F. Supp. 3d at 627.

In the present matter, Plaintiff has submitted affidavits and sufficient documentary support to support its request for damages.  Plaintiff seeks a total of $150,797.10 for unpaid principal, interest, advancements, fees and other costs.  *See* Dkt. No. 51-1 at ¶¶ 30-35.  Plaintiff has submitted an affidavit from LoanCare, Plaintiff's loan servicer, and several different business records showing that $125,383.73 of the principal balance remains unpaid and that interest has accrued in the amount of $14,932.22 as of December 31, 2018.  *See* Dkt. No. 51-2 at ¶ 18 and at

10

174, 181, 186. Plaintiff also provided the Court with Defendant Fox's payment history on the note from 2007 through 2017. *See id.* at 186-89, 190-213.

Plaintiff also requests $5,045.34 in "recoverable costs," which include costs stemming from property preservation, securing the property, inspections, and appraisals. *See id.* at ¶ 20-21. Additionally, Plaintiff requests $4,800.12 for advances it made to Defendant Fox to cover escrow shortages. *See id.* at ¶¶ 22-23. Plaintiff further requests compensation for a number of different fees: $249.47 for pre-acceleration late fees, $50.50 for recording fees, $80.00 for NSF charges, and $26.32 in "other fees." *Id.* at ¶¶ 24-26. Lastly, Plaintiff requests that the foregoing costs be partially offset by a suspense credit of $1,086.08. *See* Dkt. No. 51-1 at ¶ 31.

To establish a basis for these costs, Plaintiff also relies on the LoanCare affidavit, *see* Dkt. No. 51-2 at 2-8, as well as the following documentation: the note, *see* Dkt. No. 1-3 at 2, mortgage, *see id.* at 10, note modification agreement, *see id.* at 31, mortgage assignments, *see id.* at 29, 32, and detailed records of advances made to Defendant Fox for purposes ranging from lawn maintenance to attorneys' fees, *see* Dkt. No. 51-2 at 174-76. Plaintiff has also provided copies of LoanCare's "Fee Activity Ledger" documenting late fees and NSF charges. *See id.* at 215-24.

Accordingly, the Court finds that the affidavit and supporting independent documentation sufficiently substantiate Plaintiff's request for damages as to the unpaid mortgage principal, unpaid interest, and other costs and fees. Therefore, the Court finds that Plaintiff is entitled to damages, costs and fees in the amount of $150,797.10.

## IV. CONCLUSION

After carefully considering the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiff's Motions for Default Judgment (Dkt. Nos. 46, 51) are **GRANTED**; and the Court further

**ORDERS** that judgment shall be entered in Plaintiff's favor against Defendant Fox in the amount of $150,797.10 in damages, $3,350.50 in attorneys' fees, and $2,902.53 in reimbursement for disbursements for a total of $157,050.13; and the Court further

**ORDERS** that the Clerk of the Court shall enter the Judgment of Foreclosure and Sale against Defendants and close this case; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 19, 2019
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge